## UNITED STATES DISTRICT COURT
## THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**AARON PARTON,**
**PLAINTIFF**

**CASE NO. 1:07-CV-00476**
**(BARRETT, J.)**
**(HOGAN, M.J.)**

VS.

**COMMISSIONER OF**
**SOCIAL SECURITY,**
**DEFENDANT**

### REPORT AND RECOMMENDATION

Plaintiff filed his applications for disability insurance benefits (DIB) and supplemental security income (SSI) in September, 2003. He alleged an onset date of November 23, 2001. Plaintiff's applications were denied, both initially and upon reconsideration. Plaintiff then requested and obtained a hearing before an Administrative Law Judge (ALJ) at Cincinnati, Ohio on March 23, 2006. At the hearing, Plaintiff, who was represented by counsel, testified as did Vocational Expert (VE), Janice Bending and Medical Expert (ME), Terry Schwartz. Following an unfavorable decision in June, 2006, Plaintiff processed an appeal to the Appeals Council, who refused review in July, 2006. Plaintiff then filed his Complaint with this Court in June, 2007, and sought judicial review of the final order of the Defendant Commissioner denying him benefits.

### STATEMENTS OF ERROR

Plaintiff asserts that the ALJ erred in several respects. He first argues that the ALJ gave insufficient weight to the opinions of Drs. Irfan Dahar and Jose' Martinez. Next, Plaintiff contends that the ALJ erred in determining drug use was a material contributing factor. Finally, Plaintiff argues that the ALJ erred in evaluating his credibility and subjective reports of pain.

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified that he suffers from a bipolar condition, he has anxiety, depression, fatigue, neck pain, lower back pain and leg pain. He stated he had uncontrollable, daily crying spells and daily thoughts of suicide. He further testified that he had three hospital admissions due to suicide attempts. He suffered from a lack of energy, decreased appetite, and seldom left his house unless he had a doctor's appointment. On average, he had about 4 doctor's appointments a month.

Plaintiff described neck stiffness and pain all the time and that just turning his head left or right or moving it up and down cause more pain. Plaintiff stated he could sit for less than ten minutes, and could walk less than two blocks. He also described tingling in his hands. Plaintiff testified to dropping things and an inability to lift even 10 pounds.

When asked what about work he would find stressful, Plaintiff relied "I just can't deal, I can't just deal with being on a job, just having to be there or the tasks that I have to perform, I just can't perform them anymore."

He testified that he had no mental health treatment prior to detox treatment in 2001 or 2002. He lost custody of his children and went through this treatment so he could retain custody of his children. He stated drug use was not one of the reasons he lost custody. He testified that he began using drugs in the 1980s. He testified he used drugs after his children were taken from him due " out of depression. I just, you know, I just did it, ... I just used it." (Tr. 937-960).

2

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The ALJ's hypothetical question to the VE assumed an individual who has the residual functional capacity to lift and carry up to fifteen pounds occasionally and less weights more frequently. The hypothetical individual can stand and/or walk up to one hour at a time and up to two hours total during an eight-hour workday. The hypothetical individual has unlimited sitting; occasional balancing, stooping, crouching, crawling, kneeling, and climbing stairs and ramps; and no climbing ladders, ropes, or scaffolds. Lastly, due to his mental impairments other than polysubstance abuse, any job the claimant could perform must involve routine and repetitive tasks with simple instructions. The VE responded that an individual of plaintiff's age, education, and work history with those limitations could perform the full range of sedentary jobs such as: accounting clerk (500 jobs locally and 71,500 jobs nationally); receptionist/information clerk (720 jobs locally and 94,200 jobs nationally); office clerk (410 locally and 60,500 nationally); inspector (106 jobs locally and 14,000 nationally); and production worker (449 jobs locally and 57,000 nationally) (Tr. 980-82).

## MEDICAL EXPERT TESTIMONY

The ME testified that he is certified in substance abuse counseling. He stated that based on the record, plaintiff could be categorized as suffering from polysubstance abuse and dependence and a mood disorder. He found that polysubstance abuse was a material factor in Plaintiff's inability to perform work-related activities. (Tr. 960-78).

3

## OPINION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ concluded that Plaintiff has severe impairments of "degenerative disc disease, obesity, polysubstance abuse, a personality disorder, a mood disorder, a bipolar disorder, and borderline intellectual functioning." Tr. 32 (finding 3). The ALJ's RFC findings concluded that:

> The claimant has the residual functional capacity, excluding
> polysubstance abuse, to lift/carry/push/pull 15 pounds occasionally
> and less than that amount frequently. He can stand and/or walk for
> two hours in an eight-hour workday, but can do so for no longer
> than one hour at a time. He has no limits regarding sitting. He can
> climb ramps and stairs occasionally, but is unable to climb ladders,
> ropes, or scaffolds. He can balance, stoop, crouch, kneel, and crawl
> occasionally. Due to his mental impairments other than
> polysubstance abuse, any job the claimant could perform must
> involve routine and repetitive tasks with simple instructions.

*Id.* (finding 6). The ALJ then found that Plaintiff is unable to perform his past relevant work as a glazer and sheet metal worker. *Id.* (finding 7). The ALJ then used section 201.25 of the Grid as a framework for deciding, coupled with a vocational expert's testimony, and concluded that based on a residual functional capacity for a limited range of sedentary work, there are a significant number of jobs in the national economy that he could perform if his polysubstance abuse is excluded. Id. (finding 12). The ALJ concluded that Plaintiff is not disabled excluding his polysubstance abuse and therefore not entitled to benefits under the Act. Tr. 33 (finding 15).

## MEDICAL OPINIONS

The parties have provided informative and detailed descriptions of the pertinent medical records in their briefs. In light of this, and upon consideration of the complete administrative record, additional detailed discussion of the record would be unnecessarily

4

duplicative, a general identification of the medical sources upon whom the parties rely will help frame further review.

Plaintiff relies on the opinions of her treating psychiatrist, Irfan Dahar, M.D. Plaintiff initially saw Dr. Dahar on June 17, 2004, wherein he was diagnosed with bipolar disorder, generalized anxiety disorder, and polysubstance abuse (in remission), and assigned a GAF score of 50. At that time, Dr. Dahar prescribed medications and recommended individual therapy. (Tr. 684-85). Plaintiff treated with Dr. Dahar about once a month through February 2005 wherein Dr. Dahar adjusted his medications (Tr. 686-91).

On January 19, 2006, Dr. Dahar, completed a Mental Residual Functional Capacity Questionnaire. At that time, Dr. Dahar had been Plaintiff's treating psychiatrist for 2 years. Dr. Dahar saw plaintiff twice a month therapy sessions. Dr. Dahar diagnosed Plaintiff with bi-polar disorder and a generalized anxiety disorder and assigned Plaintiff a GAF of 50. Dr. Dahar identified forty-one signs and symptoms from which plaintiff suffered. When evaluating aptitude to do unskilled work, Dr. Dahar found that Plaintiff had no useful ability to function at completing a normal workday and workweek without interruptions from psychologically based symptoms, was unable to perform at a consistent pace without an unreasonable number and length of rest periods, was unable to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and was unable to deal with normal work stress. Dr. Dahar also found that Plaintiff could not set realistic goals or make plans independently of others, nor could he interact appropriately with the general public. Dr. Dahar further opined that Plaintiff's experience of pain exacerbate his depression, anxiety and panic rendering him helpless and with a low stress tolerance. Dr. Dahar concluded that Plaintiff would

5

be absent more than four days per month due to his impairments or treatment.

When asked if alcohol and/or substance abuse contributed to the limitations set forth in his residual functional capacity, he indicated no. When asked to identify the clinical findings that demonstrated the severity of Plaintiff's impairments, no response was indicated. (Tr. 766-76).

Plaintiff also relies on the opinion of Dr. Jose' Martinez who completed a Medical Assessment of ability to perform work related activities form on January 22, 2004. (Tr. 779-90). Plaintiff had lumbar pain radiating into his left leg and was severely nervous due to pain. Dr. Martinez opined that Plaintiff was limited to lifting only 5-10 pounds, standing and walking for only 10-15 minutes at a time, sitting for only 15 minutes at a time and never climb, balance, stoop, crouch, kneel nor crawl. Plaintiff's ability to reach, handle and push were affected by his herniated discs. Dr. Martinez explained that his opinion was based on his October 2003 examination, as Plaintiff had not returned since then; Dr. Martinez repeatedly stressed that a functional capacity evaluation was necessary to determine Plaintiff's true functioning abilities. (Tr. 779-83).

The Commissioner relies on the opinions of Kevin Eggerman, M.D., who performed a consultative examination on March 21, 2003. Plaintiff acknowledged a history of substance abuse, and legal problems related to that abuse. Stated he was psychiatrically hospitalized in April 2002 due to suicidal ideation, but at this time was receiving no mental health treatment, and had not followed up after his April 2002 hospitalization. Dr. Eggerman noted that Plaintiff was moderately anxious, though he stated that this was grossly exaggerated by Plaintiff. He stated had been abstinent from drugs for 4-5 months. Histrionic behaviors were noted, as were passive aggressive traits. He was primarily focused on somatic symptoms,

6

although he an examination with no signs of physical discomfort or limitation. His concentration was fair. His range of affect was fair, and was not depressed Dr. Eggerman diagnosed poly-substance dependence in early full remission, a mood disorder not otherwise specified, and a personality disorder not otherwise specified; he assigned a current GAF score of 55-60. Dr. Eggerman concluded that Plaintiff had a good ability to understand and remember simple instructions, that his ability to relate to co-workers and supervisors is fair but negatively impacted by avoidant behaviors, and that he otherwise has a fair ability to persist on a task and tolerate work-related stress. (Tr. 347-52).

On March 26, 2002, David Chiappone, Ph.D. performed a consultative examination. Plaintiff reported that he had received some Special Education while in school. As an adult, he had five felonies and 10 misdemeanors, and had been imprisoned twice, was on probation at the time of the evaluation. He started drinking alcohol at age 15, and last used in 1997, after undergoing substance abuse treatment. He stated he smoked marijuana a few times, injected heroin years ago, and underwent substance abuse treatment in 1997. He described feeling depressed. He put forth mediocre persistence on the tests administered to him. His Verbal IQ on the WAIS-III was 78. The Performance IQ was 69, and the Full Scale IQ was 72. He functioned in the borderline range of intelligence. His diagnoses were alcohol and polysubstance abuse in remission, a pain disorder due to general medical condition, borderline intellectual functioning, and an unspecified personality disorder, assigned a Global Assessment of Functioning (GAF) was 70.  Dr. Chiappone opined that Plaintiff could understand and remember one- and two-step instructions, maintain attention and concentration, and relate to coworkers, supervisors, and the public; he found that Plaintiff was mildly impaired in his ability to tolerate stress due to his

7

borderline intellect and mildly impaired in his ability to carry out tasks due to pain. (Tr. 300-03).

The ALJ placed physical limitations on the plaintiff, based largely on the opinions Dr. Balamuvugan G. Krishnan, an internist, who first examined Plaintiff on October 4, 2002. Dr. Krishnan diagnosed Plaintiff with chronic low back pain and sciatica. He prescribed medications and referred Plaintiff to physical therapy. When completing a basic medical form for the Ohio Department of Health Services, he concluded Plaintiff was unemployable for twelve months or more. He further opined that Plaintiff's ability to stand/walk, sit, and lift/carry were affected, but he did not respond to any follow up questions to assess the degree of limitation in these areas. (Tr. 175-76).

Dr. Krishnan completed a Medical Assessment of ability to perform work-related activities form on January 27, 2004. Dr. Krishnan concluded that Plaintiff could perform work involving: lifting and carrying less than twenty pounds; standing/walking two hours total during an eight-hour workday and up to one hour at a time; sitting without limitations; frequent climbing; and occasional balancing, stooping, crouching, kneeling, and crawling. When asked for the medical findings that supported this assessment, the doctor responded that the work-up was done before he began treating Plaintiff.(Tr. 184-88).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported

by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389,401 (1971) (citing *Consolidated Edison Co.* v. *N.L.R.B.,* 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner* v. *Mathews,* 574 F.2d 359 (6th Cir. 1978).

      To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(1),423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(I)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2). Similarly, to qualify for SSI benefits, plaintiff must likewise file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months and plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

      To qualify for SSI benefits, plaintiff must file an application and be an "eligible

9

individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is

dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To

establish disability, plaintiff must demonstrate a medically determinable physical or mental

impairment that can be expected to last for a continuous period of not less than twelve

months. Plaintiff must also show that the impairment precludes performance of the work

previously done, or any other kind of substantial gainful employment that exists in the

national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process

for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether

the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability

is made and the inquiry ends. Second, if the individual is not currently engaged in substantial

gainful activity, the Commissioner must determine whether the individual has a severe

impairment or combination of impairments; if not, then a finding of nondisability is made and the

inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it

to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix I. If the

impairment meets or equals any within the Listing, disability is presumed and benefits are

awarded. 20 C.F.R. § 404.1 520(d). Fourth, if the individual's impairments do not meet or equal

those in the Listing, the Commissioner must determine whether the impairments prevent the

performance of the individual's regular previous employment. If the individual is unable to

perform the relevant past work, then a prima facie case of disability is established and the burden

of going forward with the evidence shifts to the Commissioner to show that there is work in the

national economy which the individual can perform. *Lashley* v. *Secretary of HHS.,* 708 F.2d

1048 (6th Cir. *1983); Kirk* v. *Secretary of HHS.,* 667 F.2d 524 (6th Cir. 1981), *cert. denied, 461* U.S. 957 (1983).

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 CFR §404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 CFR §404.1521(b). Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.,* 736 F.2d 352, 357 (6th Cir.1984). The severity requirement may be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint. *Higgs v. Bowen,* No. 876189, slip op. at 4 (6th Cir. Oct.28, 1988). An impairment will be considered non severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.,*773 F.2d 85, 90 (6th Cir. I985)(citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The Secretary's decision on this issue must be supported by substantial evidence. *Mowery v. Heckler,* 771 F.2d 966 (6th Cir. 1985). Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born* v. *Secretary of Health and Human Servs.,* 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch* v. *Richardson,* 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that

plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon* v. *Apfel,* 168 F.3d 289, 291 (6th Cir. 1999); *Born,* 923 F.2d at 1173; *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiffs individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.,* 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson* v. *Secretary of Health & Human Services,* 735 F.2d 962,964 (6th Cir, 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiffs prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner,* 587 F.2d at 323. *See also Cole* v. *Secretary of Health and Human Services,* 820 F.2d 768, 771 (6th Cir. 1987).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs." *Richardson* v. *Secretary of H.H.S., 735* F.2d 962, 964 (6th Cir. 1984) (per curiam) (emphasis in original); *O'Banner* v. *Secretary of H.E.W.,* 587 F.2d 321,323 (6th Cir. 1978). Taking notice of job availability and requirements is disfavored. *Kirk* v. *Secretary of H.H.S.,* 667 F.2d 524,536-37 n.7, 540 n.9 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). There must be more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *Richardson,* 735 F.2d at 964; *Kirk,* 667 F.2d at 536-37 n.7. The Commissioner is not permitted to equate the existence of certain work with plaintiff's capacity for such work on the basis of the Commissioner's own opinion. This crucial gap is bridged only through specific proof

12

of plaintiff's individual capacity, as well as proof of the requirements of the relevant jobs.

*Phillips* v. *Harris,* 488 F. Supp. 1161 (W.D. Va. 1980)(citing *Tayor v. Weinberger,* 512 F.2d 664

(4th Cir. 1975)). When the grid is inapplicable, the testimony of a vocational expert is required to

show the availability of jobs that plaintiff can perform. *Born v. Secretary of H.H.S.,* 923 F.2d

1168, 1174 (6th Cir, *1990); Varley* v. *Secretary of H.H.S.,* 820 F.2d 777, 779 (6th Cir. 1987).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must be

supported by some evidence in the record. *Hardaway* v. *Secretary of H.H.S.,* 823 F.2d 922, 927-

28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff"in all

significant, relevant respects; for a response to a hypothetical question to constitute substantial

evidence, each element of the hypothetical must accurately describe the claimant." *Felisky* v,

*Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley* v. *Secretary of HHS.,* 820 F.2d 777,

779 (6th Cir. 1987). Where the evidence supports plaintiffs allegations of pain, a response to a

hypothetical question that omits any consideration of plaintiffs pain and its effects is of "little if

any evidentiary value." *Noe* v., *Weinberger,* 512 F.2d 588, 596 (6th Cir. 1975). However, "the

AU is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v.*

*Secretary of H.H.S.,* 39F.3d 115, 118 (6th Cir. 1994).

Pain alone, if the result of a medical impairment, may be severe enough to constitute

disability. *Kirk* v, *Secretary of H.H.S.* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S.

957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must

first determine whether there is objective medical evidence of an underlying medical condition. If

there is, the Commissioner must then determine: (1) whether the objective medical evidence

confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical

impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan* v. *Secretary of H.H.S.,* 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky* v, *Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones* v. *Secretary of H.H.S.,* 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require ... 'objective evidence of the pain itself.'" *Duncan,* 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiffs activities, the effect of plaintiffs medications and other treatments for pain, and the recorded observations of pain by plaintiffs physicians. *Felisky,* 35 F.3d at 1039·40.

Where the medical evidence is consistent, and supports plaintiffs complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King* v. *Heckler,* 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky, 35* F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Kirk,* 667 F.2d at 538. "If an ALI rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky, 35* F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for

14

meaningful appellate review." *Hurst* v. *Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir, 1985)(citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

"In general, the opinions of treating physicians are accorded greater weight those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 530-31 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985); *Lashley* v, *Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler,* 756 F.2d 431 (6th Cir. 1985). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in {the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters,* 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris,* 756 F.2d at 435. *See also Cohen* v, *Secretary of H.H.S.,* 964 F.2d 524, 528 (6th Cir. 1992). The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians. *Shelman v. Heckler,* 821 F.2d 316, 321 (6th Cir. 1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. *Walter v. Commissioner,* 127 F.3d 525, 529 (6th Cir. 1997); *Shelman,* 821 F.2d at 321.

The Contract with America Act of 1996 ("Welfare Reform Act"), Pub.L.No. 104-121,

15

110 Stat. 852, 853, prohibits the award of SSD and SSI to individuals for whom alcoholism or drug addiction is a contributing factor material to the Commissioner's determination that the individual is disabled. *See,* 42 U.S.C. §§423(d)(2)(C), 1382c(a)(3)(J). A finding of disability is a condition precedent to an application of §423(d)(2)(C). Obviously, if the claimant is found not disabled, despite whatever limitations he ore she has, including those related to substance or alcohol abuse, the question of whether claimant's limitations are impacted by such drug or alcohol use is moot. Thus, to determine whether a claimant's drug or alcohol addiction is a contributing factor material to the Commissioner's finding of disability, the Regulations essentially require the ALJ to perform a three part analysis. First, the ALJ must determine whether the claimant is disabled, taking into account the "gross" total of claimant's limitations, including the effects of any substance use disorders. *Williams v. Barnhart*, 338 F. Supp.2d 849, 863 (W.D. Tenn. 2004)(citing *Brueggemann v. Barnhart*, 348 F.3d 689, 693-95 (8th Cir. 2003)). Second, that ALJ must make a determination that drug or alcohol use is a concern. *Id.* Third, the ALJ must determine, based on substantial evidence, what limitations would remain in the absence of claimant's alcoholism or drug addiction, and whether, based on those "net" limitations which do not encompass any limitations attributable to alcohol or drug use, plaintiff is disabled under the five step sequential evaluation process. *Id.* If the remaining or "net" limitations would be disabling, the drug abuse and alcoholism is not material, and the individual is disabled.; if the remaining limitations would not be disabling, the drug abuse and alcoholism is material and the individual is not disabled within the meaning of the Act. 20 C.F.R. §416.935(b)(2)(I)-(ii).

16

## OPINION

Plaintiff's first two assignments of error are that the ALJ gave undue weight to the
reports of consultive and non-examining physicians and psychiatrists instead of giving more
weight to the reports of Dr. Dahar, plaintiff's treating psychiatrist and Dr. Jose' Martinez,
Plaintiff's treating orthopedist. The ALJ stated in his written decision that he gave
"consideration" to the reports of the state agency medical consultants, Dr. David Chiappone,
Ph.D. as well as to other treating, examining, and non-examining medical sources, "little weight"
to the opinions of Dr. Martinez and Dr. Slattery, plaintiff's former primary care physician, and
"some weight" to the opinions of Drs. Krishnan, Eggerman and Dahar.

Plaintiff has not demonstrated that the ALJ applied incorrect standards of law when
evaluating the medical source opinions. *See* Doc. #11 at 6-9. He contends, however, that the
ALJ's decision is not supported by substantial evidence because the opinions of treating
psychiatrist, Dr. Dahar, and treating orthopedist, Dr. Martinez, support a disability finding and
are contrary to the restrictions established by the ALJ's assessment of his residual functional
capacity.

The ALJ correctly described the legal standards applicable under the treating
physician rule and also correctly described the additional regulatory factors that apply to treating
physicians and other medical sources under 20 C.F.R §§416.927(d) and (f). *See* Tr. 26-27. The
ALJ then applied the correct legal criteria to Dr. Martinez's opinions, finding that the "medical
evidence shows the claimant's back disorder to be nowhere near as severe as is shown in Dr.
Martinez's assessments. His muscle strength is 5/5, the sensory examinations are normal, straight
leg raising is often negative, and the MRI's show minimal findings. Furthermore, Dr. Martinez

17

states that he has not examined the claimant since October 2003, and that anyone treating him

should perform a functional capacity examination in order to determine the claimant's true

functional capacity (Exhibit 35F, page 6; Exhibit 30F, page 7)." (Tr. 26). By evaluating Dr.

Martinez's opinions in this manner, the ALJ did not err as a matter of law. *See* 20 C.F.R.

416.927(d)(2)-(5).

In applying the standards to Dr. Dahar's opinions, the ALJ concluded:

> Some weight is also given to the opinion of Irfan Dahar, M.D.
> (Exhibits 33F and 34F). He assessed the claimant's mental ability
> to perform work-related activities, and he markedly limited the
> claimant's abilities. The undersigned agrees with this determination
> when the impact of the claimant's polysubstance abuse is
> considered. However, Dr. Dahar states that the claimant's
> substance abuse does not contribute to the limitations in his
> assessments (Exhibit 34F, page 7). Medical expert Terry Schwartz,
> Psy.D., testified that the polysubstance abuse is a critical factor in
> the claimant's ability to perform work- related activities, and the
> medical evidence supports his testimony, as is shown above.
> Almost all of the claimant's hospitalizations have involved
> polysubstance abuse, and drug tests as recent as October 2005 were
> positive. Furthermore, Dr. Schwartz testified that there are
> inconsistencies in Dr. Dahar's assessment and a review of the
> assessment verifies this testimony as well. Dr. Dahar states that the
> claimant does not have a low IQ or reduced intellectual functioning
> (Exhibit 34F, page 6). This statement is incorrect. The claimant
> received Special Education assistance while in school, and has IQ
> scores in the borderline range (Exhibit 7F).

(Tr. 27). Substantial evidence supports the ALJ's decision not to place controlling weight on Dr.

Dahar's opinions. As the Commissioner correctly recognizes, Dr. Dahar's opinion is not

supported by the totality of the evidence on the record. For example, Dr. Dahar did not make any

reference to Plaintiff's substance abuse (such as a history of substance abuse, or substance abuse

in remission) when he listed Plaintiff's diagnoses on the form that he completed. (Tr. 766). And,

18

on that same form, Dr. Dahar found that Plaintiff's substance abuse did not contribute to his

limitations. Yet, as the ALJ noted, almost all of Plaintiff's hospitalizations involved substance

abuse.(Tr. 27). Moreover, Dr. Dahar's own treatment notes do not support the statements that he

made on the form that he completed. For example, he wrote that he saw Plaintiff twice a month.

(Tr. 766). His notes, however, do not document such frequent visits (Tr. 684-93). His treatment

notes further do not support his opinion of disabling limitations, as his notes simply document

Plaintiff's complaints and adjustments to his medications (Tr. 684-93). As such, given this lack

of support, the ALJ reasonably did not give controlling weight to Dr. Dahar's opinion. *See* Doc.

16 at 17.

Contrary to Plaintiff's contentions, the ALJ's credibility determination is supported by

substantial evidence. The ALJ noted that Plaintiff was "very evasive concerning his drug use at

the hearing". Plaintiff changed his testimony about his last drug use 2 times during the hearing

after being confronted with positive drug screens. The ALJ continued,

> Almost every inpatient hospitalization has been associated with
> drugs. In August 2003, he admitted he was an intravenous drug
> user (Exhibit 14F, pages 29-30). He was positive for cocaine in
> June 2003, February 2004, March 2004, and October 2005
> (Exhibits 14F, 17F, 18F, 22F, page 8, 32F, and 36F, page 88).
> There is substantial evidence of drug-seeking behavior (Exhibit
> 14F, pages 21-22; Exhibit 18F, and Exhibit 22F). He gave
> conflicting stories about whether he had any back pain pills at
> home or not (Exhibit 18F, page 4). In addition, there is evidence he
> lied about drug use (Exhibit 24F, page 3). He stated in September
> 2004 that he has no history of drug use. He denied drug use in June
> 2005, yet a drug screen from the same month was positive (Exhibit
> 22F, pages 112 and 119). The claimant denied drug use to Dr.
> Dahar in October 2004 (Exhibit 25F, page 6). The claimant alleged
> being abstinent from drugs for four or five months in March 2003
> (Exhibit 12F, page 2). However, he was using painkillers more and
> more one month earlier (Exhibit 10F, page 2). Additionally, there

> is evidence indicating that the claimant is not always compliant with treatment. It was noted in June 2005 that he had not been taking his medications for the past few days (Exhibit 22F, page 124).

(Tr. 28). Plaintiff asserts in his remaining error that the ALJ erred by rejecting his testimony about the severity of his pain levels, as well as his testimony about his resulting inability to perform work and other activities. Contrary to Plaintiff's contentions, substantial evidence supports the ALJ's credibility determination. The ALJ supports his conclusion with three pages of examples of inconsistency in plaintiff's testimony and additional evidence. (Tr. 27-29). As the Commissioner noted, MRI and EMG studies generally revealed mild or minimal findings (Tr. 171-72, 202, 250-53, 420, 695, 730) and Plaintiff's examinations supported normal neurological functioning (Tr. 333, 337, 341, 400, 498-99, 590, 700, 724). Given this substantial evidence, the ALJ's credibility determination may not be overturned. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).("ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.").

The ALJ found some of Plaintiff's subjective allegations to be credible, and the credible portions are reflected in the residual functional capacity. The ALJ further noted that Plaintiff's activities proved inconsistent with his allegations of disabling physical impairments, as he sought treatment after engaging in strenuous activities such as moving furniture and painting (Tr. 28).

Plaintiff's third assignment of error concerns the ALJ's determination that Plaintiff's drug abuse was material to his finding of disability. On this issue, the Court finds that ALJ erred in the procedure used to determine whether Plaintiff's drug use is a contributing factor material

20

to a finding of disability. As set forth above, in order to find that drug abuse is material, the ALJ

must make a determination that (1) Plaintiff is disabled based on his gross limitations; (2) drug or

alcohol abuse is a concern; and (3) substantial evidence on the record shows what limitations

would remain in the absence of alcoholism or drug addiction. *Brueggemann* , 348 F.3d at 693-

95. The ALJ's analysis properly included determinations, supported by substantial evidence, that

plaintiff's gross impairments rendered him disabled under Listings 12.04 and 12.09. And the

ALJ determined that Plaintiff's drug use is a concern, based on the medical records replete with

evidence of drug use, suicide attempts, multiple hospitalizations for inpatient mental health

treatment, and the opinions of treating an non-treating mental health sources.

However, the ALJ failed to properly determine, based on substantial evidence in the

record, what mental limitations would remain in the absence of Plaintiff's drug addiction. The

Commissioner points to the testimony of Dr. Terry Schwartz, PsyD., to support the ALJ's

conclusion that the drug use was material. On this point, the testimony of the Medical Expert

fails to constitute substantial evidence of what plaintiff's limitations would be. Rather, the ME

testified to the ultimate conclusion- that the Plaintiff's drug use is material-- rather than providing

any testimony as to what limitations would remain absent plaintiff's drug use. To the extent that

the Commissioner claims the ALJ relied on the reports of the non-examining and consultative

mental health sources, the Court finds this argument unpersuasive. The mental RFC limitations

described by Drs. Chiappone, DeMuth, Chambly, and Haskins are more extensive that the mental

RFC limitations adopted by the ALJ. For example, these doctors opine that plaintiff has limits

with social functioning which would limit to varying degrees plaintiff's ability to interact with

co-workers, members of the public, and supervisors, and or that he is limited by borderline

21

intellectual functioning, yet the ALJ fails to set forth on the record the basis for his determination that he should reject the mental RFC findings of these sources upon whom he purports to rely for his findings. To the extent that these sources state that their RFC findings or diagnoses are based on Plaintiff's abilities while his drug use is in remission, the medical records belie this point. Dr. Schwartz's testimony that the drug use is material cannot constitute substantial evidence of the remaining limitations, because nowhere in his testimony does he set forth what those remaining limitations would be. As the Eighth Circuit noted in *Brueggermann*,

> When a claimant is actively abusing alcohol or drugs, this determination [or remaining limitations absent such abuse] will necessarily be hypothetical and therefore more difficult than the same task when the claimant has stopped. . . . Even though the task is difficult, the ALJ must develop a full and fair record and support his conclusion with substantial evidence on this point as he would on any other.

348 F.3d at 698 .

According to the governing regulations, the ALJ's determination that drug abuse is a contributing factor material to a finding of disability can only be made after a finding of what limitations remain in the absence of drug abuse and whether or not those limitations are sufficient to support a finding of disability. The ALJ's finding that in the absence of drug abuse, Plaintiff's only remaining mental limitations are the need for work with routine and repetitive tasks with simple instructions is not supported by substantial evidence. Thus the ALJ's RFC findings and the subsequent hypothetical question to the VE cannot accurately reflect Plaintiff's limitations. For these reasons, the case must be remanded for further evidence, including a mental RFC finding based on what limitations remain in the absence of plaintiff's drug use and the subsequent five step sequential analysis encompassing said mental RFC findings.

## CONCLUSION

IT IS THEREFORE RECOMMENDED that this action be REMANDED for further

proceedings consistent with this opinion.

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS REPORT & RECOMMENDATION

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).